Jeffrey Trousdale (14814)
**COHNE KINGHORN, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
E-mail: jtrousdale@ck.law

*Attorneys for* debtor-in-possession,
Opulent Vacations, Inc.

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>**OPULENT VACATIONS, INC.**,<br><br>Debtor. | Bankruptcy No. 23-21941 (JTM)<br><br>Chapter 11<br>(Subchapter V) |

# DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION UNDER SUBCHAPTER V

Opulent Vacations, Inc. (the "**Debtor**"), the debtor and debtor-in-possession in this chapter 11 bankruptcy case (the "**Case**"), through counsel, submits this memorandum of law (the "**Memorandum**") in support of confirmation of the *Debtor's Plan of Reorganization dated October 25, 2023* [Docket No. 118] (as it may be further amended, the "**Plan**"). In support of confirmation of the Plan, the Debtor respectfully submits as follows.

## PRELIMINARY STATEMENT

The Plan represents a good faith proposal by the Debtor to pay its projected Disposable Income[1] to holders of Allowed Claims. The Plan should provide a significantly better result for

[1] Unless otherwise set forth herein, capitalized terms shall have the same meaning ascribed to them in the Plan.

creditors than would a liquidation under chapter 7 of the bankruptcy code, particularly when considering the administrative expenses that would be incurred by a chapter 7 trustee and the lack of unencumbered assets owned by the Debtor. The Debtor submits that the Plan is in the best interests of creditors and should be confirmed by the Court.

Although the Debtor's intent when filing the Case was to sell its operations as a going-concern business, economic conditions, such as high-interest rates, and a failed sale agreement (due to a lack of interest from the Debtor's Park City Owners to sign new marketing agreements with the proposed buyer), forced the Debtor to change its plans during the pendency of the Case. Notwithstanding the Debtor's need to pivot, the Debtor and its professionals have made substantial efforts to propose the Plan quickly and achieve a consensual confirmation of the Plan. The Debtor has also made every effort to maximize potential returns to creditors under the Plan, not only proposing to pay the Debtor's projected Disposable Income for five years, but also proposing "true up" payments every year to ensure that any upside in the Debtor is utilized to repay creditors. The Debtor seeks an opportunity to repay creditors as set forth in the Plan, reorganize its business, and continue as a going concern for years to come.

## ARGUMENT

### I. MODIFICATIONS TO THE PLAN SHOULD BE APPROVED.

As an initial matter, the Debtor anticipates that the Confirmation Order will incorporate three modifications to the Plan. Because these modifications do not "adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, [they should] be deemed accepted by all creditors and equity security holders who have previously accepted the plan." Bankr. R. 3019. Specifically, the

Debtor anticipates making the below-described changes to the Plan, which shall be incorporated by the Confirmation Order.

First, at the request of the United States Trustee, the Debtor has agreed to modify Section 12.3(iii) as follows (changes shown in red):

> That the Debtor made any preferential or fraudulent transfer or any other voidable transfer or payment to any Person (although the Reorganized Debtor and/or the SBRA Trustee [as set forth in section 5.2 of the Plan] shall have the right to bring such Claims).

This modification ensures that the SBRA Trustee has express authority to bring Avoidance Actions against insiders of the Debtor, in addition to the authority retained by the Reorganized Debtor.

Second, pursuant to its stipulation with the United States Small Business Administration, which is filed with the Court, the Debtor has agreed to modify section 4.3(b) of the Plan as follows (changes shown in red, with strikethrough denoting a deletion, and underlining denoting an addition):

> The Allowed Secured Class 3 Claim shall be treated in accordance with non-default terms of the SBA Loan Documents. The Debtor shall make payments to the holder of the Allowed Secured Class 3 Claim consistent with the schedule, amount, and non-default interest rate set forth in the SBA Loan Documents, commencing with the first regularly scheduled payment beginning after the Effective Date <u>and ending on the original maturity date of April 22, 2050, at which time the entire balance of principal and interest then outstanding shall be due and payable</u>. ~~After the Debtor completes all regularly scheduled payments to the SBA under the SBA Loan Documents, the SBA Default Balance will be paid in monthly installments at the same amount at the Debtor's regular non-default payments under the SBA Loan Documents.~~

Third, the Debtor discovered an error in Section 4.4(b) of the Plan, and it shall modify the Plan to correct the error as follows (changes shown in red, with strikethrough denoting a deletion, and underlining denoting an addition):

> After the Debtor completes all regularly scheduled payments to Toyota Financial under the Toyota Financial Loan Documents, to the extent that an unpaid balance exists under the Toyota Financial Loan Documents as of the Effective Date, such unpaid balance will be paid in monthly installments at the same amount at the Debtor's regular non-default payments under the ~~SBA~~ Toyota Financial Loan Documents.

The Debtor also discovered numbering errors in the Plan sections (beginning at section 4.7, which appears twice), and will correct those errors. Finally, at the request of the Utah State Tax Commission, the Debtor has agreed to add the following language to the Confirmation Order:

> Notwithstanding anything to the contrary in the Confirmed Plan or this Confirmation Order, neither confirmation of the Plan nor the Confirmed Plan becoming effective nor any release, discharge or exculpatory language thereunder shall be construed, or shall be effective to, limit or prohibit the Utah State Tax Commission ("USTC") from: (1) determining that one or more of Debtor's current and/or former officers, directors, executives, employees, representatives, agents, and/or other responsible persons, is personally liable for sales tax and/or withholding tax owed by Debtor to USTC as provided by applicable non-bankruptcy law; (2) assessing a penalty against the responsible person(s) for failure to collect, account for, and/or pay sales tax and/or withholding tax owed by Debtor to USTC as provided by applicable non-bankruptcy law; and/or (3) collecting from a responsible person(s) the assessed amounts with interest and penalties as provided by applicable non-bankruptcy law. Nothing in the Plan or Confirmation Order shall release from personal liability any current and/or former executive, officer, director, employee, agent, or representative of Debtor, and/or other responsible person from their potential personal liability for collecting and remitting trust fund taxes to the USTC, or prevent or limit USTC's rights under Utah Code Annotated Sections 59-1-101, et seq., including Section 59-1-302.

The Debtor submits that the proposed modifications to the Plan are reasonable under the circumstances, represent a valid exercise of the Debtor's business judgment, and should be approved by the Court as modifications to the Plan that do not adversely affect the treatment of any accepting creditor.

## II. THE PLAN MEETS THE REQUIREMENTS FOR CONFIRMATION UNDER SECTION 1191(A) OF THE BANKRUPTCY CODE.

To obtain confirmation of a subchapter V chapter 11 plan, the proponent must demonstrate that the plan satisfies the requirements of Bankruptcy Code § 1191. As discussed below, the Plan satisfies these requirements and should be confirmed.

Bankruptcy Code § 1191 provides two pathways to confirmation of a subchapter V chapter 11 plan, found in Bankruptcy Code § 1191(a) and (b). The Court can and should confirm the Plan because even though the Plan has to satisfy the requirements of either Bankruptcy Code § 1191(a) or § 1191(b), in this case the Plan satisfies both pathways to confirmation.

Under Bankruptcy Code § 1191(a), the Court "shall" confirm a subchapter V chapter 11 plan if it meets all of the requirements of Bankruptcy Code § 1129(a), other than Bankruptcy Code § 1129(a)(15). The Plan meets these requirements and accordingly should be confirmed under Bankruptcy Code § 1191(a).

### A. Section 1129(a)(1) – The Plan Complies with the Applicable Provisions of Title 11.

Section 1129(a)(1) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if the plan "complies with the applicable provisions of this title." The legislative history of section 1129(a)(1) indicates that the primary focus of this requirement is to ensure that the form of the plan complies with the provisions of section 1122 (classification of claims and interests) and section 1123 (contents of a plan) of the Bankruptcy Code. See S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5913; H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.CCAN. 5962, 6368; see also In re PWS Holding Corp. Brunos, Inc., 228 F.3d 224, 243 (3d Cir. 2000) ("[t]his requires that the plan conform to the applicable provisions

of Title 11"); Kane v. Johns-Manville Corp., 843 F.2d 636, 648-49 (2d Cir. 1988) (legislative history indicates that section 1129(a)(1) was intended to require compliance with sections 1122 and 1123); In re Genesis Health Ventures, Inc., 266 B.R. 591, 599 (Bankr. D. Del. 2001) (citing legislative history and cases).

1. Classification of Claims and Interests.

The basic rule governing the classification of claims and interests is that the claims or interests within a given class must be "substantially similar" to the other claims or interests in that class. See 11 U.S.C. § 1122(a). Notably, the Bankruptcy Code does not require the converse—that all similar claims be placed in one class. See In re Woodbrook Assocs., 19 F.3d 312, 318 (7th Cir. 1994) ("Section 1122 does not expressly forbid the separate classification of similar claims."); In re Jersey City Med. Ctr., 817 F.2d 1055, 1061 (3d Cir. 1987) ("[W]e agree with the general view which permits the grouping of similar claims in different classes."); In re First Interregional Equity Corp., 218 B.R. 731, 738-39 (Bankr. D.N.J. 1997) (referencing the trustee's power to classify similar claims in different classes). In fact, courts have recognized that a proponent of a plan "has considerable discretion to classify claims and interests in a chapter 11 reorganization plan" and may classify claims differently if there are " 'good business reasons' for doing so or if the claimants have sufficiently different interests in the plan." In re Wabash Valley Power Ass'n, 72 F.3d 1305, 1321 (7th Cir. 1995); see also In re Keck, Mahin & Cate, 241 B.R. 583, 589 (Bankr. N.D. Ill. 1999) (the plan proponent "has broad discretion in classifying claims" and may classify similar claims in separate classes if the proponent "can articulate differences among the claims") (citations omitted).

The Plan properly classifies Claims. Article 3 of the Plan provides for the separate classification of Claims into six distinct Classes[2] (and one class of Equity Interests) based on differences in their legal nature or priority.

This classification structure is proper because each Class under the Plan differs in legal character or nature. Furthermore, all Claims within each Class are substantially similar to the other Claims in that Class. Claims within a Class are treated equally. Accordingly, the classification structure set forth in the Plan is proper, thereby satisfying the requirements of section 1122.

2. The Plan Meets the Requirements of Section 1123(a) of the Bankruptcy Code.

Section 1123(a) of the Bankruptcy Code identifies seven requirements for the contents of a plan of reorganization. As shown in sequence below, the Plan fully complies with each of these requirements.

*a. Section 1123(a)(1) — The Plan Designates Classes of Claims.*

The Bankruptcy Code requires that a plan designate classes of claims, other than claims of a kind specified in section 507(a)(1) (administrative expense claims), section 507(a)(2) (claims arising under the "gap" period in an involuntary case), and section 507(a)(8) (tax claims). Article 3 of the Plan designates six Classes of Claims. Administrative Expense Claims and Priority Tax Claims are not classified, but are treated under Article 2 of the Plan. The Plan therefore complies with section 1123(a)(1) of the Bankruptcy Code.

[2] In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

*b. Section 1123(a)(2) — The Plan Specifies Unimpaired Classes.*

Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan." The Plan specifies the treatment of all unimpaired classes (only the class of Equity Interests is unimpaired) in Article 4. As such, the Plan meets this requirement.

*c. Section 1123(a)(3) — The Plan Specifies the Treatment of Impaired Classes.*

Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the Plan." The Plan specifies the treatment of all impaired classes in Article 4, thus satisfying this requirement.

*d. Section 1123(a)(4) — The Plan Provides for the Same Treatment of Claims within the Same Class.*

Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Article 4 of the Plan complies with this provision because all holders of Claims within a particular Class receive identical treatment under the Plan.

*e. Section 1123(a)(5) — The Plan Provides Adequate Means for its Implementation.*

Section 1123(a)(5) of the Bankruptcy Code requires that a plan of reorganization "provide adequate means for its implementation" and lists certain examples, such as retention by the debtor of all or any part of the property of the estate; transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan; merger or consolidation of the debtor with one or more persons; amendment of the debtor's

charter; or cancellation or modification of any indenture or similar instrument. See 11 U.S.C. § 1123(a)(5). Articles 4, 5, and 6 of the Plan provide adequate means for its execution and implementation. They include: (a) the contribution of the Debtor's projected Disposable Income for a period of five years to be paid as Plan Payments to holders of Allowed Claims, (b) the continuation of bankruptcy case administration as needed; (c) cash distributions to the holders of Allowed Claims; (d) the continuation of the Debtor's business to earn income for the benefit of its creditors; and (e) the express grant of authority to the SBRA Trustee to investigate and pursue Avoidance Actions, as he deems appropriate, including against insiders of the Debtor.

*f. Section 1123(a)(6) — The Required Charter Provisions Are Not Necessary or Applicable.*

Section 1123(a)(6) of the Bankruptcy Code specifies that a Plan provide for the inclusion of provisions in a corporate debtor's charter prohibiting the issuance of certain nonvoting securities and the establishment of an appropriate distribution of voting power. The Plan does not contemplate or allow for the issuance of nonvoting securities or a change in any voting powers.

*g. Section 1123(a)(7) — The Plan Provides for the Selection of Officers and Directors.*

Section 1123(a)(7) of the Bankruptcy Code requires that a plan contain only provisions that are consistent with the interests of creditors and with public policy with respect to the manner of selection of any officer, director, or trustee. The Plan proposes that Jeff Jenson shall continue to manage the Reorganized Debtor with a reasonable, set salary for the Plan Period. Mr. Jenson is the person most knowledgeable about the Debtor's business and is motivated to ensure that the Debtor performs as well as possible under the Plan, and the Debtor submits that the

management of the Debtor by Mr. Jenson is in the best interests of creditors and is consistent with public policy.

3. Permitted Contents of a Plan.

Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan of reorganization, provided they are "not inconsistent with" applicable provisions of the Bankruptcy Code.

As permitted under section 1123(b), the Plan contains provisions: (a) governing the disposition of executory contracts and unexpired leases (Plan, Article 8); (b) governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed (Plan, Articles 4, 5, and 6); (c) establishing procedures for resolving Disputed Claims and making distributions on account of such Disputed Claims once resolved (Plan, Article 6); and (d) regarding the retention by this Court over certain matters after the Effective Date (Plan, Article 10).

4. The Plan Meets the Requirements of Bankruptcy Rule 3016(a).

The Bankruptcy Rules require that "[e]very proposed plan and any modification thereto shall be dated and, in a chapter 11 case, identified with the name of the entity or the entities submitting or filing it." Fed. R. Bankr. P. 3016(a). The Plan satisfies this rule as it is dated and identifies the Debtor as the person submitting it.

The Plan therefore complies with applicable provisions of the Bankruptcy Code and satisfies the requirements of section 1129(a)(1).

### B. Section 1129(a)(2) – The Debtor Has Complied with All Applicable Provisions of Title 11.

The legislative history of section 1129(a)(2) of the Bankruptcy Code indicates that its principal purpose is to ensure that the proponent of a plan complies with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code. See S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368. However, Bankruptcy Code § 1125 is not applicable in a subchapter V case unless the Court so orders.

The Debtor has complied with the applicable provisions of the Bankruptcy Code and Rules, including filing required monthly operating reports, the required status report, bankruptcy schedules, and statement of financial affairs, and use of a debtor-in-possession bank account. The Debtor is a proper debtor under Bankruptcy Code § 109 and is the proper proponent of the Plan under Bankruptcy Code § 1189(a).

The Debtor is in compliance with the applicable provision of the Bankruptcy Code and therefore satisfies the requirements of Bankruptcy Code § 1129(a)(2).

### C. Section 1129(a)(3) — The Plan Has Been Proposed in Good Faith.

Section 1129(a)(3) of the Bankruptcy Code requires that a plan of reorganization be "proposed in good faith and not by any means forbidden by law." While good faith is not defined in the Bankruptcy Code, this Court has listed a number of factors to consider when determining good faith. See In re LRM Liquidation, Inc., Case No. 12-35291, Dkt. 338, ¶ I,

2014 Bankr. LEXIS 3070, at ** 7-9: (Bankr. D. Utah, J. Mosier, July 17, 2014). The Plan is consistent with the factors the Court listed in LRM Liquidation, including:

- The Debtor filed the bankruptcy case and proposed the Plan for a valid reorganizational purpose.
- The Debtor is actively prosecuting its bankruptcy case, including by filing and prosecuting its Plan and promptly seeking confirmation of the Plan.
- The Debtor proposed the Plan with the legitimate and honest purpose of, among other things, providing a return to creditors.
- The Plan contemplates distributions to the holders of Allowed Claims from the contribution of the Debtor's Disposable Income, plus the "Third Quarter True Up Amounts" (to the extent there are any), as defined under the Plan.
- This is not a case involving a single creditor and instead involves multiple creditors.
- The Plan is feasible, in that the Debtor's projected Disposable Income is based on the Debtor's and its financial advisor's assessment of the Debtor's income and expenses, as adjusted for the Debtor's loss of the majority of is "Park City" operations and its focus on the Lake Tahoe market. The Debtor anticipates that it will be able to make the Plan Payments called for under the Plan.

The second prong of section 1129(a)(3) requires that the plan not contravene any applicable non-bankruptcy law. See In re Keolbl, 751 F.2d 137, 139 (2d Cir. 1984). The Debtor believes that the Plan is consistent with applicable non-bankruptcy law. In light of the foregoing, the Debtor satisfies the requirements of Bankruptcy Code § 1129(a)(3).

**D. Section 1129(a)(4) – All Payments to be Made by the Debtor in Connection With this Case Are Subject to Approval by the Court.**

Section 1129(a)(4) of the Bankruptcy Code requires that all payments made by the debtor or by a person issuing securities or acquiring property under a plan, for services or for costs and expenses incurred in connection with the case or the plan, be approved by the Court as reasonable.

As set forth in section 2.2 of the Plan, all fees and expenses of Professionals incurred through the Effective Date will be subject to the Court's approval. Moreover, section 10.1(b) of the Plan provides that this Court will retain jurisdiction after the Effective Date to hear and determine all applications by Professionals and others for compensation and reimbursement of expenses. Accordingly, the Plan complies with the requirements of section 1129(a)(4).

**E. Section 1129(a)(5) – The Debtor's Identity and Affiliations Have Been Disclosed in the Plan**

Bankruptcy Code § 1129(a)(5) provides that a plan of reorganization may be confirmed only if the proponent discloses the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of debtor, or a successor to debtor under the plan." In addition, under Bankruptcy Code § 1129(a)(5)(A)(ii), the appointment or continuation in office of such individual must be consistent with the interests of creditors, equity security holders, and public policy, and the nature of compensation to insiders must be disclosed.

The Plan states that Jeff Jenson shall manage the Reorganized Debtor at a salary of $90,000 (subject to increase, but in no event greater than $120,000), which is reasonable under the circumstances. Mr. Jenson's intimate knowledge of the Debtor's business makes him the best

person to run the Debtor for the benefit of creditors. Accordingly, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(5).

### F. Section 1129(a)(6) – The Plan Does Not Provide for Any Rate Change Subject to Regulatory Approval.

Section 1129(a)(6) of the Bankruptcy Code requires that "[a]ny governmental regulatory commission with jurisdiction, after the confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." The Plan complies with this statute because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

### G. Section 1129(a)(7) – The Plan is in the Best Interests of Creditors.

Section 1129(a)(7) requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class (a) has accepted the plan or (b) will receive or retain property of a value not less than what such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. This provision is often referred to as a test of whether the plan is in the "best interests" of impaired creditors.

The Plan meets this requirement because all creditors will receive more than they would receive in a hypothetical chapter 7 case. If the Debtor's bankruptcy case was to be converted to a case under Chapter 7 of the Bankruptcy Code, a Chapter 7 trustee would be appointed to liquidate the Estate's assets. The Debtor's Liquidation Analysis (attached as Exhibit B to the Plan) illustrates that unsecured creditors are projected to receive significantly more under the Plan than they would in a hypothetical Chapter 7 case, because the Debtor does not have any assets that are unencumbered that could be liquidated for the benefit of unsecured creditors. In

other words, in a Chapter 7 case, unsecured creditors will receive nothing. Therefore, the Plan easily satisfies the "best interest of creditors" test.

### H. Section 1129(a)(8) – The Plan Has Been Accepted By the Requisite Classes of Creditors or is "Fair and Equitable" for Non-Accepting Classes of Creditors.

Pursuant to Section 1129(a)(8) of the Bankruptcy Code, unless a plan is to be confirmed pursuant to the "cram down" provisions of Bankruptcy Code § 1129(b), as modified by Bankruptcy Code § 1191(b), the plan must be accepted by all impaired classes of claims or interests.

As evidenced by the Ballot Summary, holders of Claims in Classes 1, 3 and 5 who returned Ballots unanimously voted to accept the Plan. And the holders of Claims in Class 2 voted by a significant majority to accept the Plan (albeit not unanimously).

Additionally, three of the Classes of Claims have accepted the Plan by opting neither to vote nor to object to confirmation. See In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988) (presuming acceptance of class of creditors that did not return a ballot and did not timely object to confirmation); In re John Kuhni Sons, Inc., 10-29038 RKM, 2011 WL 1343206 at *4 (Bankr. D. Utah Mar. 30, 2011) ("As to the classes wherein no creditors voted …, the creditors silence is deemed acceptance of the Plan"); In re Jones, 530 F.3d 1284, 1291 (10th Cir. 2008) ("the failure to object constitutes acceptance of the plan"); In re Armstrong, 292 B.R. 678, 684 (B.A.P. 10th Cir. 2003) ("a nonvoting, nonobjecting judgment lien creditor is deemed to have accepted the plan").

No Class of creditors voted to reject the Plan and no creditor objected to the Plan. Accordingly, the Plan should be confirmed under § 1191(a) as a consensual Plan. Although the Plan should be confirmed under § 1191(a), the Debtor will show below that the requirements of

Section 1191(b) also are met with respect to all Classes of Claims. For purposes of § 1191(b), a plan is "fair and equitable" if it complies with subparagraph (c)(2) and (c)(3) as follows:

> (c) Rule of Construction. - For purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:
>
> (2) As of the effective date of the plan -
>
> (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
>
> (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.
>
> (3) (A) The debtor will be able to make all payments under the plan; or
>
> (B) (i) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and
>
> (ii) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

The Plan provides "fair and equitable" treatment for creditors for two reasons. First, the Debtor's projected "Disposable Income" will be contributed under the Plan for a period of five years—the maximum amount of time allowed by the Bankruptcy Code. Accordingly, § 1191(c)(2)(A) is satisfied. Moreover, based on the Debtor's lengthy history in business, its ability to survive during the leanest months of its business (as well as the disruption caused by the filing of the case), and its efforts to reorganize and streamline operations, the Debtor will be able to make the Plan Payments (or, at least, there is a reasonable likelihood that the Debtor will

be able to make Plan Payments). The Plan also provides appropriate remedies in the event that Plan Payments are not made.

**I. Section 1129(a)(9) – The Plan Provides For the Payment of Priority Claims.**

Bankruptcy Code § 1129(a)(9) requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments, provided, however, that such claimants may "agree otherwise," and provided further that Bankruptcy Code § 1191(e) sets forth a "special rule," which says that "a plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) of this title may be confirmed under subsection (b) of this section." The Plan incorporates the "special rule," and provides that Administrative Expense Claims will be paid through Plan Payments if necessary. Moreover, because all such claimants have accepted the Plan, such claimants have "agreed otherwise" in satisfaction of § 1129(a)(9).

Bankruptcy Code § 1129(a)(9)(B) requires that each holder of a claim of a kind specified in Bankruptcy Code §§ 507(a)(3) through (7) — generally, wage, employee benefit and certain deposit claims entitled to priority — must receive (a) if the class has accepted the plan, deferred cash payments of a value equal to the allowed amount of such claim; or (b) if the class has not accepted the plan, cash equal to the allowed amount of such claim on the effective date of the plan. To the extent that such persons exist, the Plan proposes to pay such persons from Plan Payments until their Claims are paid in full or until the Final Distribution Date. Accordingly, the Plan meets the requirement of § 1129(a)(9)(B).

Finally, Bankruptcy Code § 1129(a)(9)(C) provides that the holder of a claim of a kind specified in Bankruptcy Code § 507(a)(8) — i.e., priority tax claims — must receive deferred cash payments over a period not to exceed five years, the present value of which equals the

allowed amount of the claim. See In re Dow Corning Corp., 244 B.R. 718, 719 (Bankr. E.D. Mich. 1999) ("Reorganization plans are routinely confirmed with provisions for [priority tax] payments on an annual basis and there is nothing in 1129(a)(9)(C) or anywhere else in the Bankruptcy Code suggesting that this is improper."); see also U.S. v. TM Bldg. Prods., Ltd., 231 B.R. 364, 372 (S.D. Fla. 1998) (the term "deferred cash payments" means "periodic payments, the interval of which is determined by balancing the circumstances of the Debtor with the reasonable right of the creditor to receive prompt payment of its claim"). The Plan provides for the repayment, in full, of priority tax claims subject to the payment "waterfall" set forth in Article 6.6 of the Plan. Accordingly, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(9).

**J. Section 1129(a)(10) – The Plan Has Been Accepted By at Least One Impaired, Non-Insider Class.**

Section 1129(a)(10) of the Bankruptcy Code requires that the Plan be accepted by at least one class of claims that is impaired under the Plan, determined without including the acceptance of the plan by any insider. As set forth in the Ballot Summary, this requirement is satisfied by the acceptances of Classes 2 and 4, without considering the votes of insiders that voted in favor of the Plan in Class 2.

**K. Section 1129(a)(11) – The Plan is Feasible.**

Under Bankruptcy Code § 1129(a)(11), a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan." Bankruptcy Code § 1129(a)(11). One commentator has stated that this section "requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success

and is workable." 7 Lawrence P. King, et al., Collier on Bankruptcy ¶ 1129.03[11] (15th ed. Rev. 2002), at 1129-1164; accord In re Cellular Info Sys., Inc., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994); In re Rivers End Apartments, Ltd., 167 BR 470, 476 (Bankr. S.D. Ohio 1994).

Bankruptcy Code § 1129(a)(11), however, does not require a guarantee of the plan's success; rather, the proper standard is whether the plan offers a "reasonable prospect" of success. See In re Danny Thomas II Ltd. Partnership, 241 F.3d 959, 962 (8th Cir. 2002) ("While a reorganization plan's 'success need not be guaranteed,' the bankruptcy court cannot approve a plan unless it has at least a reasonable prospect for success.") (internal citations omitted); Bridgeport Jai Alai, Inc. v. Autotote Systems, Inc., 215 B.R. 651, 653 (Bankr. D. Conn. 1997) (stating that success does not need to be "absolutely assured.").

Courts have identified a number of factors relevant to evaluating the feasibility of a proposed plan of reorganization, including (a) the prospective earnings or earning power of the debtor's business, (b) the soundness and adequacy of the capital structure and working capital for the debtor's post-confirmation business, (c) the debtor's ability to meet its capital expenditure requirements, (d) economic conditions, (e) the ability of management and the likelihood that current management will continue, and (f) any other material factors that would affect the successful implementation of the plan. See, e.g., In re Clarkson, 767 F.2d 417, 420 (8th Cir. 1985); In re WCI Cable, Inc., 282 B.R. 457, 486 (Bankr. D. Or. 2002); In re S&P, Inc., 189 B.R. 159, 168-169 (Bankr. N.D. Ind. 1995).

The Plan in the instant Case contemplates that the Debtor's projected Disposable Income will be paid to creditors over five years. The Debtor anticipates, and the Plan contemplates, that its Disposable Income will be $16,810 per month. The Debtor and its financial advisors calculated the Debtor's projected Disposable Income, shown in the Plan Projections, based on

their review of the Debtor's historical operations as well as its operations during the pendency of the Bankruptcy Case. The Debtor's historical operations included substantial business in Park City, Utah, as well as other locations in the Western United States, which has decreased substantially during the Bankruptcy Case due to the Debtor's difficulty retaining homeowners in the Park City market. However, the Debtor's operations in the Lake Tahoe market remain ongoing and largely unaffected by the Bankruptcy Case.

The Debtor's busiest months are winter (by far), and then summer. Most of the Debtor's winter bookings are made in January, when ski season is in full swing. As of December 11, 2023, as shown in Exhibit "1" to the declaration of Jeff Jenson, submitted (or to be submitted) in support of the Plan, the Debtor has $429,000 in advance bookings through May. The Debtor still has significant inventory that remains available for booking, and consistent with historical patterns, the Debtor expect bookings to increase substantially in the next months.

The Debtor's summer season came immediately after the bankruptcy filing, and the Debtor was forced to make significant adjustments to the Debtor's business due to the bankruptcy case and the downsizing of the Park City operations, which impacted the Debtor's profitability during those months. Now that many of those adjustments have been made, the Debtor expects to perform profitably on a year-to-year basis during the Plan Period.

Finally, the Debtor's management is continually making efforts to adjust the Debtor's business to maximize efficiency and profitability. For example, the Debtor rejected its leases of office space and storage space in Park City earlier in the Case. The Debtor also plans to sell one of the Debtor's two vehicles to further reduce operating costs. And the Debtor's management intends to regularly assess and streamline the Debtor's operating costs, now that the majority of its business will be in Lake Tahoe.

The confirmation of the Debtor's Plan, however, will permit the Debtor to re-focus on operations and, together with the impending Winter season, should allow the Debtor to resume profitability. As such, confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor.

In short, the plan offers a reasonable prospect of success, and is workable. The Debtor submits that the requirements of section 1129(a)(11) are satisfied.

**L. Section 1129(a)(12) – The Plan Provides for the Payment of Fees**

Bankruptcy Code § 1129(a)(12) requires that, as a condition precedent to confirmation of a plan of reorganization, "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." Bankruptcy Code § 1129(a)(12). SBRA amends 28 U.S.C. § 1930(a)(6)(A), such that U.S. Trustee fees do not apply in a Subchapter V case.

**M. Section 1129(a)(13)-(16) – Not Applicable**

Bankruptcy Code § 1129(a)(13) (retiree benefits); (a)(14) (domestic support obligations); (a)(15) (individual debtor disposable income requirements, which are removed under SBRA); and (a)(16) (transfers by non-profit corporations or trusts) are not applicable in this Case.

**N. Section 1129(c) – Only One Plan is Being Confirmed.**

Section 1129(c) of the Bankruptcy Code provides that a court may confirm only one plan. In the instant case, the Plan is the only plan that has been proposed or will be confirmed.

### O. Section 1129(d) – The Principal Purpose of the Plan is not Tax Avoidance or Avoidance of Securities Laws.

Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of application of section 5 of the Securities Act of 1933. As noted above, the Plan has been proposed with the honest intent to reorganize and pay creditors' Claims. Moreover, no party-in-interest that is a governmental unit has objected to confirmation of the Plan on the basis that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, section 1129(d) of the Bankruptcy Code is satisfied.

WHEREFORE, for the reasons, and based on the authorities and evidence presented above, and as will be further demonstrated at the Confirmation Hearing, the Debtor submits that the Plan satisfies all of the applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and should be confirmed. Accordingly, the Debtor respectfully requests that the Court enter an order (a) confirming the Plan, and (b) granting the Debtor such other and further relief as is just and appropriate.

Dated: December 11, 2023

**COHNE KINGHORN P.C.**

/s/ Jeffrey Trousdale
JEFFREY TROUSDALE
*Attorneys for Opulent Vacations, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December, 2023, the foregoing document was electronically filed with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system.

- **David P. Billings** dbillings@fabianvancott.com, mbeck@fabianvancott.com
- **Matthew James Burne** matthew.burne@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Bret R Evans** brevans@swlaw.com, jritchie@swlaw.com,docket_slc@swlaw.com,awayne@swlaw.com
- **John S. Gygi** john.gygi@sba.gov
- **Tait Meskey** tmeskey@swlaw.com, jritchie@swlaw.com,awayne@swlaw.com,docket_slc@swlaw.com
- **Mark C. Rose** mrose@mbt-law.com, markcroselegal@gmail.com
- **D. Ray Strong tr** rstrong@thinkbrg.com, UT30@ecfcbis.com;drstrong@ecf.axosfs.com
- **Jeffrey L. Trousdale** jtrousdale@cohnekinghorn.com, mparks@ck.law;apetersen@ck.law
- **United States Trustee** USTPRegion19.SK.ECF@usdoj.gov
- **Aaron M. Waite** aaronmwaite@agutah.gov

I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system.

/s Jeffrey Trousdale