Jeffrey Trousdale (14814)
**COHNE KINGHORN, P.C.**
111 E. Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
E-mail: jtrousdale@ck.law

*Attorneys for* debtor-in-possession
Opulent Vacations, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br>**OPULENT VACATIONS, INC.,**<br>Debtor. | Bankruptcy No. No. 23-21941<br>Chapter 11<br>(Under Subchapter V)<br>Honorable Joel T. Marker |

**MOTION TO APPROVE POST-CONFIRMATION MODIFICATION TO PLAN OF REORGANIZATION UNDER SUBCHAPTER V**

Opulent Vacations, Inc., debtor and reorganized debtor in the above-captioned case (the "**Debtor**"), pursuant to Bankruptcy Code §§ 1193, 1122, and 1123, files this Motion to Approve Post-Confirmation Modification to Plan of Reorganization Under Subchapter V (the "**Motion**"). In support of the Motion, CK respectfully represents as follows:

**BACKGROUND**

1. On May 15, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under subchapter v of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing bankruptcy case No. 23-21941 (the "**Case**").

2. The Debtor elected to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code. Accordingly, this is a "Sub-V" case, and the provisions of Bankruptcy Code §§ 1181 – 1195 are applicable to this Case.

3. Consistent with Bankruptcy Code § 1183, a "small business" trustee, D. Ray Strong (the "**Trustee**"), is appointed in the Case.

## THE PLAN

4. On October 24, 2023, the Debtor filed the *Debtor's Plan of Reorganization dated October 25, 2023* [Docket No. 118] (as subsequently amended, the "**Plan**").

5. Broadly speaking, the Debtor's Plan proposed to pay holders of Allowed Claims[1] the Debtor's "Disposable Income" for a period of five years, to be distributed to such holders on a pro rata basis as provided in this Plan.

6. The Debtor's projected Plan Payments were anticipated to be $16,810.00 per month, based on the Debtor's projected Disposable Income. The Plan called for Plan Payments to be distributed on a Quarterly Basis ($50,430 per Quarter).

7. On December 15, 2023 (the "**Confirmation Date**"), the Bankruptcy Court entered its *Order Confirming Debtors' Plan of Reorganization Dated October 25, 2023, as Modified* (the "**Confirmation Order**").

8. The Confirmation Order confirmed the Plan (as modified by the Confirmation Order), pursuant to Bankruptcy Code § 1191(a), as a consensual plan. Pursuant to sections 1.25 and 9.1 of the Confirmed Plan, the "**Effective Date**" of the Plan was Tuesday, January 2, 2024.

9. Based on the timing of the Effective Date, the Debtor's first Plan Payment was due to be paid on April 15, 2024.

---

[1] Except to the extent defined herein, capitalized terms have the same meaning ascribed to them in the Plan.

## EVENTS SINCE THE CONFIRMATION DATE

10. The Debtor's Lake Tahoe operations are its primary remaining business, and were historically a profitable branch of the Debtor's business, and its Plan Payments and projected Disposable Income were based on the Debtor's historical revenues and net profits deriving from its Lake Tahoe business operations. In other words, even after accounting for the loss of most of the Debtor's Park City operations, the Debtor still anticipated being able to meet the Plan Payment obligations based upon its Lake Tahoe operations alone.

11. Unfortunately, the Debtor's Lake Tahoe operations did not fare as well as expected this past winter. The Debtor barely "broke even" and is coming out of the winter months in worse condition than it projected.

12. In part, the Debtor's worse-than-expected winter was due to a larger downturn in the tourism economy in Lake Tahoe. But the macroeconomic issues were exacerbated by the Debtor's issues working with its former booking service, "Guesty," which (in the Debtor's view) overcharged it for services it did not use and made booking the Debtor's properties more difficult than it needed to be.

13. The Debtor has terminated its agreement with Guesty and is exploring whether it has legal remedies against Guesty. The Debtor's new booking service, Escapia, is more streamlined, cost-efficient, and suits the Debtor's business well. The Debtor anticipates increasing revenues and reducing expenses with its new booking service.

14. Because it did not achieve its projected Disposable Income numbers, the Debtor was unable to fund its first Plan Payment, which would have been used entirely to pay the

outstanding administrative expense claims against the Estate. The Debtor has also been unable to make the payments it owes to the Small Business Administration (the "**SBA**") under the Plan.

15. In January 2024, the Debtor applied for Employee Retention Credits ("**ERCs**") that it discovered it may be eligible to receive. Based on its filed returns, the Debtor is eligible to receive approximately $369,000 in gross ERCs, less the commissions and costs owed to the company that assisted the Debtor in applying for ERCs.

16. By this Motion, the Debtor proposes to modify the Plan by contributing its ERCs to "catch up" its Plan Payments, if and when they are received. Although the Debtor does not anticipate receiving the ERCs before fall (at the soonest), the Debtor submits that this proposed modification is in the best interests of creditors for at least two reasons. First, creditors would get little to nothing in a conversion scenario (other than the potential ERCs, which the Debtor already is proposing to use to catch up on Plan Payments), and second, the Debtor is continuing to make efforts to improve its profitability, namely moving on from Guesty and focusing on growth in the Lake Tahoe market.

## RELIEF REQUESTED

17. The Debtor asks the Court to modify the Plan, such that the Debtor may use the ERCs, if and when received, to bring current all outstanding Plan Payments owed at the time that the Debtor receives its ERCs, as well as all payments owed to any Class of Secured Creditor at such time (to the extent payments are outstanding).

## BASIS FOR RELIEF

18. Bankruptcy Code § 1193(b) provides as follows:

> If a plan has been confirmed under section 1191(a) of this title, the debtor may modify the plan at any time after confirmation of the plan and before substantial consummation of the plan, but may not modify the plan so that the plan as modified fails to meet the requirements of sections 1122 and 1123 of this title, with the exception of subsection (a)(8) of such section 1123. The plan, as modified under this subsection, becomes the plan only if circumstances warrant the modification and the court, after notice and a hearing, confirms the plan as modified under section 1191(a) of this title.

19. The Debtor's Plan was confirmed under Bankruptcy Code § 1191. Because the Debtor has yet to make any payments owed under the Plan, including payments to outstanding Administrative Expense Claims, the Debtor's Plan is not yet "substantially consummated." Moreover, the Confirmation Order expressly provides that substantial consummation shall not occur unless and until the Trustee completes his investigation of insiders and provides parties with notice and an opportunity to request a status hearing regarding the results of his investigation.

20. The proposed modification satisfies Bankruptcy Code § 1122, in that there are no changes to the classification of claims or interests from the Confirmed Plan. The proposed modification satisfies Bankruptcy Code § 1123, in that there are no changes to the Plan that affect any of the requirements of Bankruptcy Code § 1123. The Plan continues to provide "adequate means" for its implementation, including (if this Motion is granted) by utilizing anticipated ERCs to pay the Debtor's obligations under the Plan.

21. By way of reminder, the best (and likely only) way that unsecured creditors will receive anything from the Debtor's Estate is through the Debtor's successful operation as a going concern. Certainly, this is not the way that the Debtor anticipated beginning its five-year

commitment under the Plan, but the Debtor submits that its proposed modification is an appropriate and viable path to provide creditors with a potential recovery under the Plan.

**WHEREFORE,** the Debtor requests that the Court enter an order modifying the Plan, such that the Debtor may utilize anticipated ERCs to come current on outstanding Plan Payments at the time it receives the ERCs, including any outstanding payments owed to Classes of Secured Creditors, and approve such other and further relief as the Court deems just and appropriate.

Dated: May 28, 2024.

**COHNE KINGHORN, P.C.**

/s/ Jeffrey Trousdale
JEFFREY TROUSDALE
Attorneys for the Debtor