Jeffrey Trousdale (14814)
**COHNE KINGHORN, P.C.**
111 E. Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
E-mail: jtrousdale@ck.law

*Attorneys for* debtor-in-possession
Opulent Vacations, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br>**OPULENT VACATIONS, INC.,**<br>Debtor. | Bankruptcy No. No. 23-21941<br>Chapter 11<br>(Under Subchapter V)<br>Honorable Joel T. Marker |

**REPLY IN SUPPORT OF MOTION TO APPROVE POST-CONFIRMATION MODIFICATION TO PLAN OF REORGANIZATION UNDER SUBCHAPTER V**

Opulent Vacations, Inc., debtor and reorganized debtor in the above-captioned case (the "**Debtor**"), pursuant to Bankruptcy Code §§ 1193, 1122, and 1123, submits this reply (the "**Reply**") in support of its Motion to Approve Post-Confirmation Modification to Plan of Reorganization Under Subchapter V (the "**Motion**"). In further support of the Motion, and in reply to the responses of the United States Trustee [Docket No. 172] (the "**UST Response**"), the United States Small Business Administration [Docket No. 174] (the "**SBA Response**"), the Utah State Tax Commission [Docket No. 175] (the "**USTC Response**"), and creditors Jennifer Hegemier and 8495 Whale Watch Way, LLC [Docket No. 173] (the "**California Creditors' Response**," and together with the UST Response, the SBA Response, and the USTC Response, the "**Responses**"[1]) and the respectfully represents as follows:

[1] The parties filing responses shall be referred to collectively herein as the "**Responding Parties**."

## ARGUMENT

In general, the Responses request additional information to support the proposed modification to the *Debtor's Plan of Reorganization dated October 25, 2023* [Docket No. 118] (as subsequently amended and confirmed, the "**Plan**"), and further request that the Debtor commit to paying the entire amount of the ERCs that it anticipates receiving. The Debtor has filed, or shortly will file, a declaration of Jeff Jenson in support of the Motion (the "**Jenson Declaration**"), which the Debtor hopes will provide the additional information requested by the Responding Parties. Additionally, by this reply, the Debtor agrees to submit the entire amount of the ERCs it receives towards Plan Payments, and further commits to recommence making Plan Payments as soon as it is able to do so from its normal business operations. The Debtor also agrees to establish a segregated account in which the ERC funds shall be deposited.

With respect to the SBA Response, the Debtor disagrees that the SBA has a first priority lien in the ERC funds, and further objects to any effort by the SBA to assert such a lien by way of the SBA Response. To the extent that the SBA does, however, have a first priority lien, such lien rights are not, and were not, affected by the Debtor's Plan, nor will they be affected by the Debtor's requested modification to the Plan. Regardless, the Debtor understands that the SBA is no longer seeking such language in an order approving its requested modification. Additionally, the Debtor has agreed to recommence making monthly payments to the SBA as soon as it is able to do so, and to catch up on any missed payments via the ERC funds.

With respect to the California Creditors' Response, the Debtor submits that the Jenson Declaration and attachments thereto provide the information requested by the California Creditors regarding the Debtor's actual performance compared to its projections at the time that

the Plan was confirmed. As explained in the Jenson Declaration, the Debtor experienced a significant downturn in revenues that largely were outside of its control. Although the Debtor has made several cuts to expenses to offset the unexpectedly low revenues, those cuts allowed it only to "break even" during the winter season. The Debtor anticipates that its efforts to streamline, together with improved macroeconomic circumstances and continued growth of its inventory, will allow it to eventually get back on track with respect to meeting its Plan obligations. In the meantime, the Debtor's commitment to contribute the entire $294,719.04[2] in net ERC proceeds towards Plan Payments directly benefits all creditors and vastly improves the feasibility of the Debtor's Plan. Additionally, with respect to the California Creditors' request to fund the Subchapter V Trustee's investigation of insiders, the Debtor's Plan already provides for the payment (or reserve for payment) of post-Effective Date administrative expenses, including but not limited to those of the Subchapter V Trustee. In short, all of the California Creditors' objections are addressed and should be overruled to the extent that the California Creditors' do not withdraw their objection.

Finally, many of the Responses raised concerns regarding the feasibility of the Debtor's Plan. In reply, the Debtor submits that one bad season does destroy the feasibility of the Plan, which the Debtor already established less than one year ago. The Debtor's historic operations in the Lake Tahoe market support the Plan's feasibility, and its efforts to cut costs and grow inventory will only serve to improve its ongoing ability to make Plan Payments. Moreover, the net ERC proceeds that the Debtor expects to receive are equivalent to nearly 5.5 of the Debtor's quarterly Plan Payments of $50,430, which provides a significant buffer with respect to

[2] Less any amounts that the Debtor would use to catch up on previously missed payments to the SBA.

feasibility. Additionally, there is no downside to creditors with respect to the Debtor's requested modification, as the only modification is the Debtor's offer to submit all of the ERC proceeds towards Plan Payments. Although the Debtor cannot guarantee that its ERC applications will be approved, the Debtor submits that the Plan, as modified, is feasible and represents the best possible result for creditors.

To conclude, the Debtor asks the Court to modify the Plan, such that the Debtor may use the ERCs, if and when received, to bring current all outstanding Plan Payments owed at the time that the Debtor receives its ERCs, as well as all payments owed to any Class of Secured Creditor at such time (to the extent payments are outstanding). The Debtor will also include language in any order approving the requested modification to: (i) require the Debtor to deposit its net ERC proceeds into a segregated account; (ii) require that the Debtor will use the entire amount of the ERC proceeds towards Plan Payments and any outstanding payments owed to Secured Classes of Claims; and (iii) authorize the Debtor to reserve such amounts as are requested by the Subchapter V Trustee to complete his investigation into the Debtor's financial affairs.

**WHEREFORE,** the Debtor requests that the overrule the Responses, to the extent that any objections remain outstanding, and approve the modifications as set forth in the Motion and modified herein.

Dated: July 25, 2024.

**COHNE KINGHORN, P.C.**

/s/ Jeffrey Trousdale
JEFFREY TROUSDALE
Attorneys for the Debtor